UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Charles P. Robinson,
    Claimant

    v.                                Case No. 16-cv-420-SM
                                      Opinion No. 2017 DNH 092

Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), claimant, Charles P. Robinson, moves to reverse or vacate the Acting Commissioner's decision denying his application for Supplemental Security Income Benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383(c). The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is granted, and the Acting Commissioner's motion is denied.

**Factual Background**

I.   Procedural History.

In 2013, Robinson filed an application for Supplemental Security Income Benefits, alleging that he had been unable to work since August 24, 2010, due to breathing problems, and neck

1

and back pain.[1]  Administrative Record ("Admin. Rec.") at 429,

433.  That application was denied (Admin. Rec. at 96), and

Robinson requested a hearing before an Administrative Law Judge

("ALJ") (Admin. Rec. at 108).

On August 25, 2015, Robinson, his attorney, and a

vocational expert appeared before an ALJ, who considered

claimant's application de novo.  Admin. Rec. at 59-82.  At the

hearing, claimant amended his alleged onset date to July 15,

2013.  Admin. Rec. at 62.  On September 3, 2015, the ALJ issued

his written decision.  The ALJ concluded that Robinson was

disabled, as that term is defined in the Act, beginning on

Robinson's 55th birthday (October 29, 2014), and continuing

through the date of the decision.  Admin. Rec. at 28.  The ALJ

further concluded that Robinson was not disabled, as that term

is defined in the Act, prior to October 29, 2014.  Id. at 23-27.

Robinson sought review of the ALJ's decision by the Appeals

Council.  Admin. Rec. at 6-12.  By notice dated August 23, 2016,

the Appeals Council denied Robinson's request for review.  Id.

---

[1]    Earlier, in October of 2011, Robinson filed an application
for Social Security Income benefits, alleging disability
beginning August 24, 2010.  Admin. Rec. 110.  Following a
hearing on June 4, 2013, that application was denied by an
administrative law judge on June 26, 2013.  Admin. Rec. at 33-
58; Admin. Rec. at 110-124.

at 1-5.  Accordingly, the ALJ's denial of Robinson's application for benefits became the final decision of the Acting Commissioner, subject to judicial review.  <u>Id</u>.

Subsequently, Robinson filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.  Robinson then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 6).  In response, the Acting Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 9).  Those motions are pending.

II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 8), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  "<u>Substantial Evidence" and Deferential Review</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

This court's review of the ALJ's decision is, therefore, both limited and deferential. The court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether she is disabled under the Act. Rather, the court's inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly

supported by substantial evidence, the court must sustain those findings <u>even when there may also be substantial evidence supporting the contrary position</u>. Such is the nature of judicial review of disability benefit determinations. See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981).

II.  The Parties' Respective Burdens.

An individual seeking SSI benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146–47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810–11 (D. Mass. 1982). If the

claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform, in light of his age, education, and prior work experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

## Background - The ALJ's Findings

In concluding that Robinson was not disabled within the meaning of the Act, the ALJ employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that Robinson had not been engaged in substantial gainful employment since his amended alleged onset of disability: July 15, 2013. Admin. Rec. at 19. Next, he concluded that Robinson suffers from the following severe impairments: "degenerative disc disease (lumbar spine); osteoarthritis (right shoulder); chronic obstructive pulmonary disease; and depression." Id. at 19. And, finally, the ALJ concluded that, as of October 29, 2014, Robinson suffers from the additional severe impairment of "right shoulder rotator cuff tear." Id. The ALJ then determined that Robinson's impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1. Id. at 20.

Next, the ALJ concluded that, prior to October 29, 2014, Robinson retained the residual functional capacity ("RFC") to perform the exertional demands of light work, as defined in 20 CFR 416.967(b).[1]  Admin. Rec. at 23.  He stated that Robinson was:

> able to occasionally balance, stoop, kneel, crouch, crawl and climb ramps, stairs, ladders, ropes and scaffolds.  He must avoid concentrated exposure to temperature extremes, dust, gases, odors, and fumes. He is able to occasionally perform overhead reaching with his right upper extremity.  He is able to sustain only brief and superficial social interaction with co-workers, supervisors and the general public.

Admin. Rec. at 23.  Beginning on October 29, 2014, the ALJ found that claimant had the additional limitation of being able to only occasionally perform "reaching forward and laterally, with

---

[1]  "RFC is what an individual can still do despite his or her functional limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairments, including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

his right upper extremity." Id. at 26. The ALJ then determined that claimant had no past relevant work. Id. at 27.

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform prior to October 29, 2014. Relying on the testimony of the vocational expert and the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, the ALJ concluded that "there are jobs that exist in significant numbers that the claimant can perform." Id. at 28. The ALJ then concluded that claimant was not "disabled," as that term is defined in the Act, prior to October 29, 2014. But, the ALJ stated, when the claimant celebrated his 55th birthday on October 29, 2014, he reached "advanced age" under the governing regulations. And, given Robinson's shift into "advanced age," his educational background, work experience, and RFC, Medical-Vocational Rule 202.01 directed a finding of "disabled" from October 29, 2014 through the date of the ALJ's decision. Id.

## Discussion

Claimant challenges the ALJ's decision on three grounds. First, he argues that the ALJ erred by failing to determine the onset date of his disability pursuant to Social Security Ruling 83-20 ("Titles II & Xvi: Onset of Disability," SSR 83-20 (S.S.A.

9

1983)) ("SSR 83-20").  Claimant also contends that the ALJ's RFC

assessment was not supported by substantial evidence because the

ALJ improperly weighted the assessment of a non-examining

source, Dr. Jaffe, who had not examined claimant's full medical

record.  Finally, claimant argues that the ALJ failed to

properly consider certain medical evidence in the record.

Robinson's first argument regarding Social Security Ruling 83-20

is persuasive, and dispositive.  Accordingly, the court need not

address his remaining arguments.

Robinson takes issue with the ALJ's determination of the

onset date for his severe impairment of a right shoulder rotator

cuff tear.  According to Robinson, that date coincided with the

date on which the ALJ found Robinson disabled.  And, Robinson

says, because his injury to his right shoulder was non-traumatic

in origin, the onset date for that impairment necessarily had to

be inferred.  Therefore, he argues, the ALJ was required to use

Social Security Ruling 83-20 to determine the onset date of that

severe impairment.

At first glance, Robinson's argument seems to misread the

ALJ's order.  As the Acting Commissioner points out, the ALJ

found Robinson disabled pursuant to Rule 202.01 of the Medical-

Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix

2 ("the Grid"), as of October 29, 2014, Robinson's 55th

birthday.  Admin. Rec. at 28.  On that date, Robinson reached "advanced age" under the governing regulations.  See 20 C.F.R. § 404.1563 ("We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work.").  And, as the ALJ explained, once Robinson reached "advanced age," given his limited education, lack of transferrable skills, and RFC of a limited range of light work, the Grid directed a conclusion that Robinson was disabled.[2]  In other words, given the condition of his health, Robinson's "shift" into advanced age on October 29, 2014, rendered him disabled.  Such a shift would typically not trigger application of Social Security Ruling 83-20.

However, upon closer inspection, Robinson's argument gains force.  As mentioned above, at step two, the ALJ found that Robinson suffered from the severe impairment of "right shoulder rotator cuff tear" beginning on October 29, 2014.  Admin. Rec. at 19.  In support of that finding, the ALJ stated: "In addition, the claimant's records show that more recently, he has had worsening of his right shoulder condition," citing an August 14, 2015, Magnetic Resonance Imaging that referenced the injury.

---

[2]    As the ALJ further noted, "Even if the claimant had the residual functional capacity for the full range of light work, a finding of disabled is directed by Medical-Vocational Rule 202.01."  Admin. Rec. at 28.

Admin. Rec. at 20.  Then, at step three, the ALJ determined,
beginning on October 29, 2014, and as a result of Robinson's
worsening shoulder condition, Robinson could perform limited
light work with the additional limitation of being able to only
occasionally perform "reaching forward and laterally, with his
right upper extremity."  Admin. Rec. at 26.

That additional shoulder impairment-related limitation is
important.  At the hearing, the following exchange took place
between Robinson's counsel and the Vocational Expert ("VE"):

> Q.   Ms. Spaulding, just thinking of the hypothetical one,
> which was a light exertional capacity of occasional
> postural, occasional overhead reaching with the right
> dominant extremity, but adding to that hypothetical, also,
> limited to occasional reaching forward or laterally with
> the right upper extremity, would a person with those
> limitations be able to do any of the three jobs that you
> listed?
>
> A.   No.  And you're – again you're talking about the right
> dominant upper dominant extremity
>
> Q.   Yes, yes.
>
> A.   Okay
>
> Q.   I was talking about the right dominant upper
> extremity, yes.
>
> A.   Okay, No.  The jobs I cited could not be performed.
> And there would be no other jobs –
>
> Q.   Thank you.
>
> A.   --based on the remainder of the hypothetical.

Admin. Rec. at 80.  So, the VE testified that there was no work
in the national economy that Robinson could perform when the
limitation of being able to only occasionally perform "reaching
forward and laterally, with his right upper extremity" was added
to his RFC.  That limitation was included in Robinson's RFC as
of October 29, 2014, because the ALJ determined the onset date
to be October 29, 2014, with regard to Robinson's right shoulder
rotator cuff tear.  Therefore, based on the testimony of the VE,
the onset date for Robinson's right shoulder rotator cuff tear
injury (which gave rise to the "reaching" limitation)
effectively became Robinson's onset date of disability.  And, if
the onset date of Robinson's shoulder impairment was, in fact,
prior to his 55th birthday on October 29, 2014, Robinson would
be deemed disabled as of the earlier date.  So, Robinson is not
wrong when he argues that the onset date of his right shoulder
rotator cuff tear impairment determined the date he became
"disabled."  And, as a result, the ALJ was required to comply
with SSR 83-20's requirements to establish the disability onset
date.

### A.    Social Security Ruling 83-20

SSR 83-20 instructs how a disability onset date should be
established, noting that, in "many claims, the onset date is
critical; it may affect the period for which the individual can

be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits." SSR 83-20, 1983 WL 31249, at *1 (S.S.A. 1983). "Accordingly, under SSR 83-20, 'it is essential that the onset date be correctly established and supported by the evidence.'" Rascoe v. Comm. of Soc. Sec., 103 F. Supp. 3d 169, 175 (D. Mass. 2015) (quoting SSR 83-20).

In "disabilities of nontraumatic origin," SSR 83-20 makes clear that there are three factors that must be considered when determining the onset date of claimant's disability: "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20, 1983 WL 31249 (S.S.A. 1983). "The starting point in determining the onset date of disability is the individual's statement as to when disability began." Id. And, "[t]he day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date." Id. However, "[t]hese two factors are significant . . . only to the extent that they are 'consistent with the severity of the condition[s] shown by the medical evidence,' which 'serves as the primary element in the onset determination.'" Wilson v. Colvin, 17 F. Supp. 3d 128, 138 (D.N.H. 2014) (quoting SSR 83-20, 1983 WL 31249, at *1-2).

"The ruling recognizes that [the onset] determination may
be especially difficult when 'the alleged onset and the date
last worked are far in the past and adequate medical records are
not available.'" <u>Fischer v. Colvin</u>, 831 F.3d 31, 35 (1st Cir.
2016) (citing SSR 83–20, 1983 WL 31249, at *2).

> In such cases, if the alleged disability involved a
> slowly progressing impairment, the ALJ may need "to
> infer the onset date" based on "medical and other
> evidence that describe the history and symptomatology
> of the disease process."  Where an inference must be
> made, it "must have a legitimate medical basis."  To
> this end, SSR 83-20 requires that "[a]t the hearing,
> the [ALJ] should call on the services of a medical
> advisor when onset must be inferred."

<u>Id</u>. (quoting SSR 83–20, 1983 WL 31249, at *2-3).  However, "an
ALJ need not call a medical advisor where no inference is
required because 'precise medical evidence' unambiguously
establishes the onset date." <u>Duguay v. US Soc. Sec. Admin.</u>, No.
15-CV-520-PB, 2017 WL 1208404, at *4 (D.N.H. Mar. 31, 2017)
(quoting <u>Fischer</u>, 831 F. 3d at 35-36).

## B.    <u>Medical Evidence Regarding Robinson's Shoulder Impairment</u>

The record supports the ALJ's determination that Robinson
suffered from shoulder pain over a long period and that his
shoulder impairment became markedly worse over time.  The
medical evidence in the record indicates that Robinson first
complained of shoulder pain to his primary care physician, Dr.

Farrell, in July, 2012.  See Admin. Rec. at 623-625.  Despite

the pain in his shoulders, Robinson reported to Dr. Farrell that

he was able to work in his garden frequently, and work on

repairing an old car.  Id.  Robinson raised his shoulder pain

again at subsequent appointments with Dr. Farrell in 2012, and,

on October 14, 2012, stated that he was finding it difficult to

lift his arms, and could no longer chop firewood as a result of

the pain.  Id. at 627, 636-638.  Robinson further indicated that

his left shoulder was more painful than his right, and, as a

result of his shoulder pain, he was taking increased amounts of

narcotic pain medication.  Id. at 636-638.  In October 2012, Dr.

Farrell wrote that Robinson's shoulder pain was "most likely

[resulting from a] rotator cuff injury, may have [an] element of

bursitis."  Id.  An x-ray performed in October 2012 indicated:

"Minimal osteoarthritic change right glenhumeral joint.  Tiny

cluster of calcifications adjacent to the posterior superior

left humeral head],] raising the possibility of underlying

calcific tendinopathy of the rotator cuff."  Admin. Rec. at 638.

     Dr. Farrell subsequently referred Robinson to an

orthopedist, Dr. Gosselin, whom Robinson visited on October 16,

2012, for bilateral shoulder steroid injections.  Id. at 639.

Dr. Gosselin referred Robinson to physical therapy.  Id.

However, on December 7, 2012, Robinson reported to Dr. Farrell

that his shoulders "felt much better" after the steroid
injections, and so he did not pursue the recommended physical
therapy.  Id. at 647.

The medical evidence in the record is then largely silent
regarding Robinson's shoulder impairment until early 2014, when
Robinson's shoulder pain worsened again.  At some point in early
2014, Robinson was evaluated by orthopedist Physician's
Assistant Oscar Gibbs for bilateral shoulder pain.[3]  See Admin.
Rec. at 862.  The record suggests that Robinson received another
round of bilateral shoulder steroid injections at his
appointment with Gibbs.  See Admin. Rec. at 818.  Then, on April
10, 2014, Robinson had an appointment with Dr. Jones, a
rheumatologist, concerning his bilateral shoulder pain.  Id. at
819-820.  Robinson reported to Dr. Jones that he had pain in his
shoulders "all day long."  Id.  He indicated to Dr. Jones that
"the first time he had a [steroid] shot in the shoulder[,] his
pain relief lasted about one year.  The second [steroid] shot
was about [two] months ago, and . . . is . . . wearing off
already."  Id.  Dr. Jones determined that Robinson's shoulder
pain was not caused by inflammatory arthritis or another
systemic rheumatologic issue, but a physical exam revealed

_____

[3]     Medical records from Robinson's 2014 appointment with Oscar
Gibbs were not included in the record.

"impingement of both shoulders," "some anterior tenderness," and
"some pain with resistance to abduction bilaterally." Id. at
820-821.

Robinson again complained of shoulder pain to Dr. Farrell
on June 23, 2014, at his annual appointment, reporting that he
could no longer "garden an acre," or cut wood. Id. at 812 -
815. He told Dr. Farrell that he had started physical therapy
for his shoulder on February 27, 2014, but had only returned for
one follow-up appointment, despite noting some improvement. Id.
Dr. Farrell referred Robinson to physical therapy for his
shoulder pain. However, on July 3, 2014, Robinson reported to
the physical therapist that "his shoulder strength and mobility
have improved" as a result of the recommended home exercise
program. Admin. Rec. at 810.

On July 24, 2014, and August 26, 2014, Robinson visited Dr.
Farrell complaining of pain in his left hip following a fall.
See Admin. Rec. at 800 – 803; 793 – 796. At both visits,
Robinson's "Patient Active Problem List" includes his chronic
shoulder pain and "impingement syndrome," but the July 2014 and
August 2014 records lack any additional discussion of Robinson's
shoulder impairments. Id. And, on August 20, 2014, when
Robinson visited Orthopedist Physician's Assistant Christopher
Aubin for left hip pain, he did not mention his shoulder

impairment at the appointment.  See Admin. Rec. at 797–799

(stating, e.g., "Aside from the hip, [Robinson] has felt

well.").

    Robinson did not raise his shoulder impairment again until

July 24, 2015, at an appointment with pain management

specialist, Dr. Ryan Burkland.  Admin. Rec. at 854.  That

medical record indicates that Robinson was "complaining of

bilateral shoulder pain[,] likely from a rotator cuff injury."

Id.  Dr. Burkland referred Robinson to an orthopedist.  On July

31, 2015, Robinson met with Rebecca Posiask, an orthopedist

Physician's Assistant, who noted that Robinson's right shoulder

was considerably more symptomatic, and that his second cortisone

injections had been less effective than his first.  Admin. Rec.

at 862.  Posiask assessed: "[b]ilateral shoulder pain; right

calcific tendinopathy with rotator cuff weakness."  Id.  On

August 14, 2015, approximately nine months after the onset date

determined by the ALJ for Robinson's severe shoulder impairment,

an MRI revealed a tear in his right shoulder rotator cuff.

Admin. Rec. at 867.

## C.  **Analysis**

    As previously noted, Robinson's medical record supports the

ALJ's finding that Robinson's shoulder pain became worse over

time.  However, an onset date of October 29, 2014, is not
supported by the medical evidence.

SSR 83-20 provides that medical evidence "serves as the
primary element in the onset determination;" the date chosen
"can never be inconsistent with the medical evidence of record."
SSR 83-20, at *2-3.  Here, the ALJ stated: "claimant's treatment
records show worsening symptoms around the age he turned 55, on
October 29, 2014."  Admin. Rec. at 26.  That may, indeed, be
true regarding some of claimant's impairments.  However, with
respect to Robinson's shoulder impairment, the medical evidence
the ALJ cited in support is not consistent with that
determination.  The ALJ cited Robinson's August 2015 MRI, which
demonstrated a tear of the rotator cuff, and medical records
from July 2015, which "show diagnosis of right calcific
tenindopathy with rotator cuff weakness, with persistent
symptoms despite physical therapy, anti-inflammatories and
multiple cortisone injections."  Admin. Rec. at 20, 26.  But,
that evidence post-dates October 29, 2014, by at least nine
months.  Therefore, it cannot reasonably be characterized as
"precise medical evidence" that unambiguously establishes
Robinson's disability onset date.  Fisher v. Colvin, 831 F.3d at
36.

SSR 83-20 requires that the ALJ determine the disability onset date either by citing to medical evidence in the record that supports that date, or, if the medical evidence is ambiguous, by consulting a medical advisor. Because the ALJ did not cite to medical evidence that supports October 29, 2014, as the onset date, the ALJ failed to properly apply SSR 83-20. And, because the record arguably supports an earlier onset date, the court concludes that remand is appropriate.

The Acting Commissioner's arguments to the contrary are unpersuasive. The Acting Commissioner argues that the ALJ did rely upon "precise evidence" in support of the October 29, 2014, onset date, namely, the 2015 medical records the ALJ cited in his decision, and Dr. Jaffe's September 2013 report. As the court has previously stated, the July 2015 and August 2015 medical records do not support an October 29, 2014, disability onset date. With respect to Dr. Jaffe's September 2013 report, it may arguably support a finding that the onset date of Robinson's shoulder impairment was not prior to September 2013, but that report pre-dates the October 29, 2014, disability onset date by over a year. Indeed, the ALJ stated that he was not relying on Dr. Jaffe's report with respect to the severity of Robinson's shoulder impairment for that very reason, noting: "additional records were submitted following Dr. Jaffe's review

regarding the claimant's shoulder impairment, and I have further reduced the claimant's residual functional capacity [as of October 29, 2014] to reflect functional limitations in reaching."  Admin. Rec. 25.

On remand, the ALJ should apply SSR 83-20 to establish Robinson's disability onset date.  To be clear, this order should not be read as requiring the ALJ to call on the services of a medical advisor to determine the onset date of claimant's shoulder impairment.  Only if, after review of the record and application of SSR 83-20, the ALJ determines that the medical record is ambiguous regarding onset date of the shoulder impairment, and does not sufficiently provide "precise evidence" to fix that date, need the ALJ call upon the services of a medical advisor to determine the onset date of disability.

Finally, the court having determined that Robinson is entitled to a remand, he is free to raise his additional arguments to the ALJ for reconsideration on remand.

## Conclusion

This is a somewhat unusual case.  The medical evidence of record could arguably support the conclusion that claimant's rotator cuff injury rendered him disabled as early as some time in 2012 (i.e., well before his 55th birthday).  Alternatively, a

plausible argument could probably be made that claimant's shoulder impairment did not become disabling until the summer of 2015. The problem, however, is that nothing in the record supports the ALJ's conclusion that claimant's shoulder injury rendered him disabled as of October 29, 2014. (Indeed, between February of 2014 and July of 2015, there is scant reference to claimant's shoulder injury in the medical record.) It appears the ALJ selected October 29, 2014, as the onset of claimant's shoulder impairment because that date coincided with claimant's 55th birthday.[4] But compliance with the requirements of SSR 83-20 may result in an earlier date.

Perhaps the ALJ (implicitly) concluded that claimant's shoulder impairment did not become "severe" until sometime after October 29, 2014, but gave him the benefit of the doubt. Absent further explanation from the ALJ, however, the court cannot affirm the conclusion that claimant's shoulder impairment became "severe" on October 29, 2014.

For the foregoing reasons, as well as those set forth in claimant's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 6) is granted to the

---

[4]    As previously discussed, claimant's 55th birthday is significant because, on that date, Robinson reached "advanced age" under the governing regulations.  See 20 C.F.R. § 404.1563.

extent it seeks remand to the ALJ for further proceedings. The Acting Commissioner's motion to affirm her decision (document no. 9) is denied. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 8, 2017

cc:  Peter K. Marsh, Esq.
     Terry L. Ollila, AUSA